EXHIBIT 2

FILED
2020-CCL-01009
12/28/2020 9:56 PM
Sylvia Garza-Perez
Cameron County Clerk

CAUSE NO. 2020-CCL-01009
_____

| | | |
|---|---|---|
| **EDGAR OMAR LOPEZ,** | § | **IN THE COUNTY COURT** |
| *Plaintiff* | § | |
| | § | Cameron County - County Court at Law V |
| **VS.** | § | **AT LAW NO.____** |
| | § | |
| **AEP TEXAS COMPANY, INC.,** | § | |
| *Defendant* | § | **CAMERON COUNTY, TEXAS** |

---

### PLAINTIFF EDGAR OMAR LOPEZ' ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

> **COMES NOW, EDGAR OMAR LOPEZ** (hereinafter referred to as Plaintiff), complaining of **AEP TEXAS COMPANY, INC.** (hereinafter referred to as Defendant, Defendant employer , "AEP Texas" or "AEP") and for such cause of action, would respectfully show unto the Court and the Jury, as follows:

#### I.
#### Discovery Level

1.1    Discovery in this litigation is intended to be conducted under Level 3, Texas Rule of Civil Procedure 190. Plaintiff Edgar Omar Lopez requests that discovery be conducted under Level 3 and that non-expedited discovery rules apply as the compensable damages exceed $100,000.00.

#### II.
#### Parties

2.1    Plaintiff, EDGAR OMAR LOPEZ is an individual residing in Harlingen, Cameron County, Texas.

2.2    Defendant, **AEP TEXAS COMPANY, INC.** is a public entity authorized to and doing business in the State of Texas and with a registered agent in the State of Texas, who may be served with process *via Certified Mail Return* Receipt *Requested* by *serving* its registered agent:

**CT CORPORATION SYSTEM**
**1999 Bryan St., Ste 900**
**Dallas, Texas 75201**

2.3     Service of citation on this Defendant is requested *via Certified Mail, Return Receipt Requested.*

**III.**
**Venue and Jurisdiction**

3.1     Venue is proper in Cameron County, Texas in that the incident made the basis of this cause of action occurred in Cameron County, Texas and the Plaintiff resides in San Benito, Cameron County, Texas.

**IV.**
**Administrative Procedures**

4.1     Within 180 days of the occurrence of the acts complained of, Plaintiff filed his initial complaint with the Texas Commission on Human Rights, now known as, the Texas Workforce Commission -- Civil Rights Division, alleging that the Defendant employer had committed unlawful employment practices against the Plaintiff in violation of the Texas Commission on Human Rights Act ("TCHRA"). The formal charge and the "Notice of the Right to File a Civil Action Letter" were filed and received as follows:

Formal Complaint Filed:                             March 12, 2020

Notice of Right to File
A Civil Action Letter Received:               October 28, 2020

4.2     On October 28, 2020, Plaintiff received from the Texas Commission on Human Rights, now known as the Texas Workforce Commission - Civil Rights Division, Plaintiff's Notice of Dismissal and Right to File Civil Action letter allowing the Plaintiff to file this lawsuit within sixty days of its receipt. Plaintiff's statutory claims have been filed within sixty days of its receipt. A copy of this notice is attached as **Exhibit "A"** and is incorporated for all purposes by reference. Plaintiff further invokes the relation back theory as well as any and all equitable doctrines

necessary to satisfy the administrative requirements set forth by law. All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

**V.**
**Factual Background**

5.1     On or about January 18, 2016, Plaintiff was initially employed by AEP Texas, San Benito Service Center as a Line Mechanic B. During Plaintiff's three years of employment, he performed all his duties with dedication, hard work and undivided loyalty. At the time of his discharge, Plaintiff was earning $63,000.00 a year.

5.2     On or about July 2016, Plaintiff went to school in Kingsville for a D300 class. Plaintiff was having trouble understanding the modules. While taking the exam the instructor Larry Thomas approached Plaintiff and asked what area Plaintiff was struggling with. He mentioned the transformers section.  Larry Thomas walked away nodding his head. As everyone was completing their tests, Plaintiff was still taking his, Larry approached him again and asked, "What is it that a you're not understanding? We have gone over all this. The third time Larry approached Plaintiff, he told him that everyone else was done and it was lunchtime. Plaintiff told him to go ahead without him that he would eat when he was done. He stated, "No. We are a team", to which Plaintiff replied, "Okay. Can you guys wait as a team. I am not done".  Plaintiff felt extremely rushed and turned in his exam. Larry then graded the exams and called Plaintiff up and stated he had failed by one and that he would have to retake the class another time. They returned back to the Rio Grande Valley. Plaintiff went to speak to his supervisor Ruben Caballero and let him know that he had failed himself and his family. Ruben stated to Plaintiff not to worry advising him that Plaintiff had one more try and to remember. "You Pass, You Pass, You Fail, You Fail.  If not, that's it.  You only get two tries". He, then left. At that moment, Plaintiff felt he had no support knowing that his job was on the line. Plaintiff felt distraught because it took him sixteen years to get in this company to just get let go like that.

5.3     On or about December 2016, Plaintiff retook the D 300 class and passed. A week prior to attending the class, Ruben had approached Plaintiff and stated, if he'd pass his class Plaintiff would get an evaluation and Plaintiff thanked him.  After passing his class they gave Plaintiff a hat as a reward which lifted him up a bit and returned to the Rio Grande Valley with eagerness to let his supervisor know.   Plaintiff went into his supervisor's office and told him he had passed, but his supervisor kept staring at his computer and simply replied, "Okay".  Plaintiff proceeded to ask him how long it would take for his evaluation to kick in, to which Plaintiff was told three months or maybe more.  Plaintiff thanked him and left feeling emotional, stressed out and anxious wondering why his supervisor was carrying about the way he was with him.  He sounded and looked as if he didn't care and Plaintiff started regretting having spoken up because now Plaintiff felt he was on his bad side.  Plaintiff kept hearing from other individuals that he was on Ruben's bad side. Plaintiff felt hopeless; even his co-workers would inquire about why he was acting the way he was towards Plaintiff. Plaintiff spoke to Crew Leader Ernest and told him what Ruben had said. Ernest stated that was inaccurate and he would try to talk to him.  Two weeks had passed, and Ruben went out onto the dock telling Plaintiff he had spoken with Juan with Human Resources about Plaintiff's evaluation. A week later Plaintiff received it, after waiting three weeks.

5.4     On or about February 8, 2017, Plaintiff went to a jobsite with Crew Leader Mario Aguirre, to move a work truck, Plaintiff got stung by a bee. The Crew leader tried removing the stinger and Plaintiff cleaned the area with an alcohol wipe and proceeded to work the rest of the day.  The following morning, Plaintiff woke up with a big bump on his forehead. He called the crew leader who stated he would let Ruben know. Plaintiff paid to see a doctor and for the prescribed medications.  The doctor instructed Plaintiff to rest for the next two days. On Monday, as Plaintiff returned to work, he went into Ruben's office and handed him the doctor's excuse.   He stated he didn't need it, so Plaintiff left the office.  The two days Plaintiff was out, were applied as sick days.  Thinking to himself, if the incident occurred while at work, why would the two days

out be considered as Plaintiff having used up two sick days. Plaintiff overheard someone say, that by applying the days as sick days, Ruben would not have to submit an incident or accident report. Plaintiff wanted to talk to Ruben about it but decided to remain silent due to recent encounters.

5.5     On or about July 7, 2017, Plaintiff decided to go see a psychologist in Edinburg Texas. Plaintiff mentioned to the psychologist he felt he was experiencing a lot of anxiety, with feelings of hopelessness, stressed out and emotional with things not seeming right. The psychologist recommended Plaintiff do a test with him, and he did. By July 28, 2017, Plaintiff received his results and the psychologist instructed Plaintiff to take the results and take them to his employer and they should know what to do with it. He had diagnosed Plaintiff with ADHD. It required assistance with the reading (comprehension) of text or instruction manual. Plaintiff should have been provided extended time for completion of assignments, particularly those than involve extensive reading/written expression. Preferential seating aimed at reducing distractions may have been required. Plaintiff should have been allowed to take exams in a less distracting environment than a typical noisy office/training room, and extended time for testing. If available, it may have been beneficial to Plaintiff if he had been able to be provided hard copies of lecture notes, allowed to record lectures, or viewing of videos of learning demonstrations. To help his organization skills, Plaintiff was suggested to find a daily organizer or planner that would fit his needs. It was advised that Plaintiff write notes for everything he was required to remember and make it a part of his daily routine. Additionally, to help reduce distractions in an educational setting, he should have been able to set up his environment to help manage any distraction. The use of headphones or earbuds may have been helpful in some situations to help reduce auditory distractors during examinations. Furthermore, working on anticipating situations where he may possibly feel restless, as well as plan ways to keep himself moving without affecting others.

5.6     The following day, Plaintiff walked into Ruben's office and stated he would like to talk to him. Plaintiff advised him he had some documents he would like for him to look at and

forward to the appropriate individual.  He took a glanced and stated, "I don't know where you are trying to go with this.  When you go to school, you pass you pass, you fail, you fail and that's it''. Plaintiff mentioned to him if he could send a guest instructor with him to help guide him in class and Plaintiff needed time when taking exams. He then placed Plaintiff's results in his desk. Plaintiff asked him if he could turn them in to Roque Martinez, the Area Manager and Juan Martinez the local Human Resources representative. His response was "Whenever I see them''. Plaintiff thanked him and left.  Plaintiff felt that he was not getting the support he needed and wanted to just quit his job.   As Plaintiff was walking to another area of the building, Felipe Martinez the service crew leader greeted Plaintiff, telling him he wanted him in his department. Plaintiff responded by telling him, he thought it sounded like a great idea. Plaintiff stated he was going to speak to the boss, (Ruben).  About twenty – thirty minutes later Felipe told Plaintiff he had spoken to Ruben, telling him he wanted Plaintiff to go with him in service, stating Plaintiff was a go-getter and hard worker. Ruben's response to Felipe Martinez's request was him pulling out a paper from his desk and stating that Plaintiff has a medical condition and what if he opened a switch or something.  Plaintiff asked him what he was doing and that he was not supposed to be showing that to anyone, because it was confidential and that he could get in big trouble.  Ruben stated to Felipe not to say anything to anyone about what he shared about Plaintiff.  Felipe stated to Plaintiff he didn't know why Ruben was behaving in such a manner.  Every Monday for about a month, Plaintiff would inquire with Ruben whether he had given his papers to Roque and Juan Martinez. He replied that he had not seen them. Finally, after the third week Plaintiff spoke to his crew leader Ernest and inquired if he would ask Ruben if he had turned in the papers Omar had given him. He told Ernest to let Plaintiff know he was going to a meeting in Pharr, TX and would give them the papers there.

5.7     On or about August 2017, during the last days of the month, Roque Martinez contacted Plaintiff, stating he had just received his result papers and asked how he could help him. Plaintiff stated he had given Ruben the papers about three weeks ago and Roque said, ''wow".

Plaintiff inquired if they could send a guest instructor with him to guide and make sure he was given enough time. He stated he would talk to Ruben. A day later, a lady called Plaintiff stating she was from Human Resources and inquired what it was he needed. Plaintiff responded he needed more time and guidance. Plaintiff told her what Felipe had told him and what Ruben had done. She stated that he was not supposed to share any of Plaintiff's medical information to anyone. She inquired whether Plaintiff wanted to file a complaint and Plaintiff stated he did. She stated someone would follow up with Plaintiff.  Sometime, the following day, Roque went in to speak to Plaintiff and asked what he wanted to do. Plaintiff stated he wanted to file a complaint against Ruben for having disclosed Plaintiff's medical information and documents. Roque expressed to Plaintiff that there was no need for that, and he would speak to him. Plaintiff told him there were other concerns and things he wanted to talk about because things were not going well. He stated ''Just talk to him. He has an open-door policy''. Plaintiff told him Ruben is not one to talk to and just turned Plaintiff down. Plaintiff told him, he had apologized, tried bonding with him He gave Plaintiff the shoulder and talked about him to the other co-workers. He stated not to worry. After that day Ruben still wouldn't talk to Plaintiff and kept ignoring him.

     5.8     On or about September 2017, Plaintiff was having a conversation with another co-worker. Tony Trevino service man (Ruben's friend) made a comment towards Plaintiff saying, "You have all that experience and yet I still make more money than you''. Plaintiff ignored his comment and went to Ruben's office to let him know what Tony had said, Ruben said to Plaintiff ''I don't know why nobody likes, Tony, he is a really nice guy''. Plaintiff mentioned to him he's done this in other conversations, and it is very obvious that he gets more accommodations and special privileges because they are acquaintances. He felt it was not appropriate because he was directing it towards Plaintiff as he knew everything that was going on with him within the company. Ruben stated to Plaintiff for him to not worry. The following day, Tony commented loudly ''Don't say anything because Omar will go complain to Ruben''.

5.9     On or about October 4, 2017, Plaintiff sent an email to Rock Martinez requesting when was a good time to set up an appointment with him, stating he'd like some guidance and to discuss some concerns. On October 13, 2017, Plaintiff sent out an email to Roque Martinez regarding his current situation, his test results, not wanting to lose his job, his classification and getting on bucket and doing primary work. Plaintiff's supervisor was aware of him doing primary work and yet refused to acknowledge that Plaintiff was ready to be a qualified observer, received no storm work. Special privileges focused on a certain individual and that the individual was moved to accommodate his work ethics, and fairness. Plaintiff mentioned he was seeking advice.

5.10    On or about December 2017, they were at a jobsite in Lyford, Texas. The apprentice and Plaintiff were given a task to do. As they were working, the apprentice brought to Plaintiff's attention a concern that he saw the rest of the crew doing that did not seem safe and wanted to stop the job. He told Plaintiff that Clémente was not a qualified observer and should not be watching a class A lineman, and if Plaintiff could bring it up to one of the crew leaders' attention. So, Plaintiff made the phone call to crew leader Ernest and he stated to him he would let the crew leader in charge know. A few minutes later Plaintiff received a phone call stating that the crew leader was watching both lineman at different poles from the middle of the field, and that the next time the one with the concern should make the phone call (For speaking up).  Plaintiff felt they blamed him for that even though it was the right thing to do.

5.11    From June 2018 to October 2018, things didn't change. Plaintiff kept to himself. Comments were made to Plaintiff that what Ruben was doing to him was not right and there had been several reports on him in the past and yet still things remained the same. Carlos, Tre, and Ernest stated to Plaintiff that why was it that the hard-working people who go to work and follow company policies and procedures are the ones management wants out. They stated they prefer the people who kiss a*@. At one point, Plaintiff worked the whole night on call and requested from Ruben around 9:30 am that he be allowed to go home and rest because he had been working all

night and was tired. He responded ''Come back at 11:00am, just 2 hours later.  Plaintiff was not able to get any sleep after driving home, eating and showering, and drive back to work. Plaintiff had an encounter with a co-worker named Freddy who was constantly criticizing, bullying, hazing, employees and Plaintiff ever since Plaintiff had been there. Plaintiff notified his crew leaders and they stated that's the way he is to everybody and he goes and tells Ruben everything that goes on here and adds more so the boss can get more upset. Plaintiff told them they needed to talk to him and tell him to stop and stated he didn't play around like that. The crew leaders stated that Plaintiff and Freddy have known each other for a long time.  Plaintiff stated it shouldn't matter that he's doing wrong. Plaintiff talked to Freddy personally about the situation, but it simply didn't seem to work.  Plaintiff was more worried about passing his test.

     5.12    On or November 2018, a co-worker, Tre came up to Plaintiff and told him Ruben told him that he (Tre) and Tony were going to get their evaluations and not to tell Omar anything. (They were in the same classification) Tre stated ''Man Omar, I don't know why Ruben doesn't like you.  You are a great employee and you give it a 100%''.  Two days later as Plaintiff was walking to his work truck with a cup of coffee, he noticed Ruben talking with a crew leader and looking at Plaintiff.  As Plaintiff was walking towards the work truck, Ruben said something to the crew leader (Homer ) and started walking by Plaintiff's side and says in Spanish, "Who do you think you are walking with a cup of coffee in your hands as if you are some big shot?" Plaintiff's response was, "Excuse me?" Again, he stated "Who do you think you are, and throw that coffee away''. Plaintiff asked him if everything was okay and he still insisted in Plaintiff throwing away the coffee. Plaintiff asked him why if everyone else has tacos and coffee every day and that he had coffee and he wanted Plaintiff to throw it. He then replied ''I don't have to give you a raise, I'm going to give it to you only because Ernest came to talk to me''.  Plaintiff immediately threw his coffee and thanked him.  Again, Plaintiff spoke to him as he was walking back and thanked for the evaluation and he just kept walking.

5.13     Later that month, Plaintiff had an encounter with Clemente, an apprentice lineman at the jobsite, due to Plaintiff using the dirt bag on the ground for the dirt to pile on. Clemente stated to Plaintiff that he didn't use the dirt bag and removed it from where Plaintiff had placed it. Plaintiff stated that it was the best equipment to use for what they were doing and placed it back. He then removed it again and threw it on the work truck and Plaintiff questioned why he was doing that.  Clemente, then approached Plaintiff and stated because he could and what was he (Plaintiff) going to do about it. Plaintiff told him not to come at him like that and that he wanted to fight Plaintiff. Plaintiff told him he was not going to fight him and there was no reason for that. Plaintiff spoke to his crew leader to have a talk with him. The next day Plaintiff spoke with Clemente and he apologized for the way he approached him and that they could have handled it a different way. During the first week of the month of November 6th, they had an after-hours meeting with three AEP individuals Tom Coad (VP) Daniel Fabela (H/R Texas) and Julio Reyes at RUDY'S BBQ Restaurant in Edinburg TX. At 5:30 pm.  The meeting was set up for anyone that had concerns or issues and wanted to get heard. Plaintiff was invited so he took the opportunity. When he got there and went to the conference area only Plaintiff and Felipe Martinez showed up. Plaintiff  pologized for the amount of people that showed up and that it showed that they are afraid to speak up and lose their jobs. Tom stood up and stated "It takes courage what you two are doing and nothing will be done to you guys ''. Felipe told them about a lot of things that were happening with Ruben and told them that Ruben had showed him Plaintiff's medical results. Daniel Fabela reacted and stated ''Why is Ruben doing this?''. They also mentioned that Ruben doesn't say good morning to certain individuals, there is favoritism, special privileges to certain individuals and discrimination on storm rosters. There were also issues with Ruben telling his buddy Tony everything that's going on. When certain individuals call in sick Ruben made sarcastic statements about those individuals, he has on A team and B team when they were supposed to be one team. Plaintiff told them all of his experiences and encounters with Ruben. Plaintiff told them that Ruben's comments towards

Plaintiff have cost him opportunities at work. They asked ''Why is this going on?''  Tom Coad was writing notes the whole time and stated ''he was very sorry and did not know this was going on'' and that they would make sure the this would get addressed. The meeting lasted two to three hrs. Things got emotional and it appeared that they could feel where they were coming from. Again, they apologized and excused themselves and told them not to worry. The next day, November 7, 2018, Tom Coad sent out an email to Plaintiff and Felipe.

5.14    On or about March 2019, an employee was de-hydrating (Clemente) while working with Plaintiff on the same pole. Another employee, (Freddy) was making comments about the individual not hacking the weather and we were taking too long. Plaintiff told Clemente to move to the side and take a break as long as he needed not to worry. Plaintiff spoke with Freddy and told him the comments he was saying were not right and he needed to stop. Clemente stated to Plaintiff that he didn't know why Freddy was like that; criticizing and making fun of people. The crew leader just kept quiet when Plaintiff looked at him, and Plaintiff knew he was getting on Freddy's bad side for speaking up.  Plaintiff also knew he was going to tell Ruben something else. What Plaintiff didn't understand was that Freddy had been arrested for fighting on his personal time and put in jail. He got suspended a week and a half with pay.

5.15    During the months of April - June 2019, a co-worker Tre approached Plaintiff and asked him, '' Hey Omar, you have anything for me to take to the safety committee? Anything?''. Plaintiff told him not really have much. He stated, "Think of anything".  Plaintiff responded to him, "Well you know". He stated to Plaintiff. "Don't worry.  Everything is confidential. Anything you can think of". So, Plaintiff told him, "Everybody was always talking about crew leader Ernest and inquiring why was he not helping Plaintiff out loading materials, stocking up trucks, not driving, and they come to Plaintiff as well and tell him to speak up to him to help him. Plaintiff stated he went in and did his job and got it done quickly and safe". Plaintiff asked Tre if crew leaders were working crew leaders or nonworking crew leaders. Tre stated that was a good question and would

bring it up in a different forum.  He also restated not to worry, because everything was confidential. A day later crew leader Ernest approached Plaintiff, stating he had heard someone mentioned at a safety committee that a crew leader from San Benito wasn't pushing his weight and if Plaintiff knew anything. Plaintiff stated to him he didn't know. He stated he had a feeling who it was. He also stated that if Tre did not tell him who it was, he would take under consideration that it was him and that would take him to Human Resources. Plaintiff told him that all the guys were always telling him stuff so why was he acting surprised. A couple of days later Ernest approached Plaintiff and told him he was informed it was him who made the comment about the crew leaders and asked him about it. Plaintiff simply told him he couldn't answer that. (In Plaintiff's mind he was saying this is supposed to be confidential.) After that, Plaintiff noticed that more people were against him and the ones that had problems with, each, were now together against him too.

5.16    On or about August 2, 2019, they had a little group pow wow out on the dock to discuss what might be going on with the crews. Freddy stated, "People need to learn to man up when they say things", while looking towards Plaintiff (Plaintiff didn't understand why it was becoming a big issue. When Freddy and the others would tell Ernest stuff it was not a problem). Plaintiff stated, "Freddy you need to stop criticizing, back biting, nit picking and bullying people and adding more things to a story. Then you go and lie to the boss".  Another stated that they need to help each other when they're loading up. Clemente stated that no one could say anything to Plaintiff because he would immediately get offended and that Plaintiff was the reason, they were told to put their phones away. Plaintiff felt that their group discussion was hopeless when he spoke up because everyone was pointing fingers at each other rather than working on a solution to work together as a team.  Plaintiff would be the one to defend him when Freddy would make fun of him. As a result, Plaintiff had a feeling something was going on. They finally came to an agreement that they would work on those things discussed.

5.17   On or about August 15, 2019, in the morning, while out on the dock, everyone ignored Plaintiff and no one was talking to him as if he wasn't there, Plaintiff still took initiative and helped them load. Around 10:00 A.M., Plaintiff was called in to the office. He walked in and Juan Martinez H/R, Ernest, and Ruben were already waiting for him. Plaintiff greeted them good morning and sat down; took a note pad to write down some things as they talked. Juan told Plaintiff he was in there due to some complaints from the employees. He stated Plaintiff was not helping out, not a team player, causing tension and was not receiving orders from lineman A (Freddy). He also stated that Plaintiff was told not to have cell phones in the meeting and he still had it, not taking accountably, They also stated that Plaintiff would get defensive and that he was bringing down the morale and culture of the department. He asked Plaintiff if he had anything to say. Plaintiff told him regarding his claim about the cell phone was not true. He further stated that in the meeting Plaintiff had it in his pocket and everyone else had it in their hands looking at it. Their phones were placed on their laps looking at it and/or on the table looking at it in front of him. Plaintiff inquired with Ruben why he was stating that about him and when it came to meetings, he was paying attention to what they were saying. Plaintiff advised Juan that he had not stated he was not taking orders from a class A lineman, but what Plaintiff could say is that he was a bully, criticizing, back biting, and made fun of people when they were dehydrated. Plaintiff inquired why he was not in the position Plaintiff was in. He told them first thing in the morning he was outside at the dock already doing something and the others were still inside eating tacos and drinking coffee. Plaintiff mentioned he was always trying to stay busy and that there was always something to do. Plaintiff further stated that he was always motivating people on the dock and they'd ask him how he'd do it to stay so active. Plaintiff told them that the culture that we have was not well. Ruben hollered, "You see? He just said our culture sucks!" Plaintiff stated that he had not said that. Juan asked Plaintiff if he had spoken to Ruben and Plaintiff told him he had in the past but gave up because he wasn't one to talk to and would give him the cold shoulder. Plaintiff told him he did

tell the crew leaders and he was following the chain of command. Juan stated to Plaintiff there was no proof of any documentation. As soon as he told Plaintiff that, he knew where it was going. He told Plaintiff couldn't do anything to those employees due to hearsay.  Plaintiff asked how it was he was able to do it to him even though it was all hearsay. Plaintiff asked Ernest if he had anything bad to say about Plaintiff's work habits and he stated he did not. Plaintiff told Juan he had some notes and he stated the notes didn't count because how was he to know for certain whether Plaintiff added or deleted any information. Juan asked Plaintiff if he would like to talk to him alone, he could, and they could meet up after lunch. Plaintiff did speak to him and asked him what advice he would give him, and he stated Plaintiff should talk to Ernest and earn his trust back. Plaintiff was left puzzled.  He stated that Tre had told Roque, Ruben and Ernest that it was Plaintiff that had shared his confidential medical information. Plaintiff simply told him that when something is said to be confidential it stayed confidential. Juan stated due to such situations, contractors would no longer be hired. Plaintiff stated that's fine. Plaintiff asked Juan since Plaintiff had no documentation for the future, he would do emails and carbon copy him to which he objected that Plaintiff do so. He asked him why and he stated there was no need to be doing that.  Plaintiff asked him if it was because it is permanent and inquired with him what advice he'd give Plaintiff to deal with getting along with others who are critiquing, and he told Plaintiff just go along with it.  Plaintiff told him he would not discuss others because he was there to do his job. Plaintiff respected others; followed company policies and rules and when he saw something questionable, Plaintiff spoke up just as the company taught them to do. He excused himself and left. It felt as if they all turned everything on Plaintiff.

5.18    On or about August 22, 2019, Ruben called Plaintiff and Ernest into his office around 1:00 pm and stated Juan had prepared a letter and was going to read it.  It was a written warning letter.  After he finished, he stated, we could speak to someone higher up if they wanted to and that Roque already was aware.  Ernest mentioned, ''Omar is really good at staying a positive

boss; he doesn't take things back to the jobsites". They were excused and Plaintiff felt he was blindsided by the write-up, because he had not gotten any verbal warning or coaching.  Plaintiff felt Juan Martinez H/R used everything Plaintiff said against him when Plaintiff thought he would be there to help Plaintiff. On August 25,2019, Plaintiff sent an email to Tom Coad (VP) and Daniel Fabela (H/R) at 9:07 pm stating Plaintiff was reaching out for help.

      5.19    On or about Thursday September 12, 2019, Plaintiff was in Kingsville in Class B100.  Plaintiff was doing his modules as they normally did. He turned in his exam and it was returned back to him for corrections due to missing information. As Plaintiff was about to proceed to make necessary corrections, Abel, the instructor stated that no one was testing and to stop what they were doing, close their books, and leave it for later.  He wanted to discuss and once finished, they proceeded to go outside for a hands-on comp. They headed back inside when they were done and continued with their work.  Shortly after, he stated we could leave, yet no one moved, so he repeated himself and said we could leave. They hurriedly placed their belongings in their bags and left.  In the midst of being rushed to leave, Plaintiff left forgetting Plaintiff still had the module in his book, accidently taking it with him.  It wasn't until, once back at the hotel, one of his classmates asked if he had already finished certain modules so he could highlight in his book. In opening his textbook, Plaintiff realized what he had accidently done. The first thing that Plaintiff saw as he flipped the book open was the module with the corrections that he needed to do.  Plaintiff shared what he had accidently done to the guys that were sitting around the same table with him.  Plaintiff also mentioned that he'd turn it in first thing in the morning. Immediately following, Johnny pulled behind Plaintiff, picked up the module and stated, "What is this?".  Plaintiff told him it was a module due for corrections and that he had forgotten to turn it in with the corrections for questions he had missed.  Plaintiff wrote and highlighted on the book that they let them take to their room and home for them to keep. The following day, Friday September 13, 2019, Plaintiff turned in his corrections with the module and proceeded with another.

5.20    Shortly after, they headed outside to clean the barns and returned to the classroom. Once inside, the instructor Abel stated to them that there was an issue brought to his attention that needed to be addressed.  He stated he was informed someone had taken a module test and was passing it around back at the hotel. Plaintiff raised his hand and explained to him that he had accidently taken a module in Plaintiff's book with the corrections paper, due to being rushed the day before.  Plaintiff apologized for having accidently taken the already graded module and further explained that Plaintiff was supposed to make corrections for one. Plaintiff told him he would take accountability and responsibility for his actions. He and another instructor, Mark Young stated cheating was not allowed and that they were grown men. Plaintiff stated that he understood. They said they didn't know what to think and for all to go ahead and leave. They were going to make a call and report the issue to higher management. Plaintiff called Abel at 12:15 pm and apologized to him and explained he had no wrong intentions with the module and that he accidently took it. He thanked Plaintiff for taking responsibility, but he just didn't want others to think that taking modules was allowed.  They were heading back to the San Benito; Texas center and Roque and Ruben were in the office stating they had heard they were able to leave home and simply call Ruben later. Plaintiff telephoned Ruben around 1:30 pm to let him know of the situation and he stated to him he had already heard about what had happened. Plaintiff explained to him in detail that he had accidently taken the module test with corrections to be made due to being hurried out. Plaintiff told him he took full responsibility and accountability of his accidental mistake. He said just not to worry that they were investigating the situation. Shortly after, Juan Martinez RGV local HR Representative walked through the door, presented himself and stated that when he's there it's not good news and he was there due to an investigation. He stated he was going to give everyone a piece of paper so that they could write down what they did or knew about the floating module test. They needed their company cell phones and they were going to back track emails, texts messages, calls photos a week prior to this day. He also stated what they wrote would be used for their defense.

Plaintiff wrote that on Wednesday, September 11, 2019 he had taken a module test and returned it to guest instructor for grading.  The guest instructor called Plaintiff back and gave him back the test module and corrections because Plaintiff had missed one.  Plaintiff sat at his desk and then Instructor Abel stated that those not taking the test put away what they were doing and would like to start with a topic. They stepped outside for hands-on comp and returned to the classroom around 4 pm.

      5.21    After they finished writing down their statement, they were sent back to class and proceeded. The guest instructor had a sign in and sign out sheet for modules. They went back to the hotel. Two of Plaintiff's classmates stated they were told to go back to get their cell phones and as they entered, they closed the doors on them and were asked to view video/pics. The two classmates stated they were asked if they were sitting in front of Plaintiff and if they could see if he had a module.  They responded they were drinking beer and minding their own business and that the HR Juan asked if he had not seen Plaintiff with a white sheet of paper, and how had Johnny seen it and they had not,  One of Plaintiff's classmates said to Plaintiff,  "Man that guy really wants to get you bad.  Something's up with that guy". Plaintiff stated he had gone to ask the front desk lady for some paper to write Plaintiff's notes and highlight as they always did.

      5.22    On or about Tuesday September 17, 2019 at about 8:00 AM as class began, the instructor, Abel stated, "Guys I know it's been a rough start.  Let's just let go and forget about what happened and stay focused".  The class went outside for hand-on comp. Afterwards, they headed back inside at 11:15 a.m. for lunch, returned to class at 12:15 pm and instructor Abel stated there has been a little change and that the class has been postponed until further notice due to the investigation and to leave their books behind. They headed home, and when Plaintiff got there around 3:25 pm or so, he went to speak to Ruben.  Plaintiff closed the door and Ruben stated to Plaintiff that he had been suspended with pay until further notice and he requested his phone, keys, badge, tools and again stated Plaintiff was suspended with pay until further notice due to the

investigation. Plaintiff asked him how long he'd be suspended for and if he needed a plan B.  Ruben stated to Plaintiff, "You can go look for work. Just don't promise anything yet, if they decide to keep you. If you need a good recommendation, I'll give you one.  You're a heck of an employee". He also stated he knew Plaintiff had already told him some of the story the last time they had spoken, but if Plaintiff wanted to tell him more Plaintiff could. Plaintiff told him that what happened was same thing Plaintiff told him on the phone on Friday 9-13-19, and he stated it was a module that was up for corrections and that he had accidently taken it. His response was, "Oh, it was a module".  After Plaintiff had told him the same story again, Plaintiff mentioned to him his classmates and he were shocked and couldn't believe that they were doing all this over a simple module (quiz test) that was due for corrections. Plaintiff also told him how they normally studied and got prepared in school. Plaintiff told him when they were given quizzed modules for corrections, some of them highlight the book where the correct answer is, and some of them write on the book, the questions of the modules as they appear with the answer to study them later.  Some of them had to go back and write them on an extra sheet of paper 2 or 3 times to memorize it due to people studying differently and that's what they all used to study as a group for the final exam. Plaintiff also told him the guest instructor saw him writing them down on the book on the desk and stated that was a good way of studying. Plaintiff thanked him and left. As he got home, he had a missed call that came in at 4:01 pm from a co-worker. Plaintiff returned the call at 4:10 pm on September 17, 2019 and the caller stated to him that somebody had gone out to the school earlier during the day and started talking out loud to employees that they had caught someone cheating the week prior and that they had taken their cell phones, sent them home and now they are on their way home again due to Plaintiff having stolen a state exam and was caught cheating. Plaintiff told him it was a quizzed module that was up for corrections and he said that others were claiming it was a state exam. He stated to Plaintiff that his boss Ruben wanted to get Plaintiff badly and he was the one making the false statements.

5.23     On or about September 26, 2019, Ruben called Plaintiff at 1:15pm and stated he had made a decision and had decided to terminate Plaintiff. Plaintiff was told to expect a letter in the mail. Plaintiff tried to write down what Ruben was telling him, but he was speaking fast but he only got a piece that he (stated loss of property) and stated it was in effect as of today. He stated he needed Plaintiff to turn in his uniforms.  On September 9,10,11,12 2019, days prior to Plaintiff's incident, there was a guest instructor (Jonathan) from Victoria TX.  He was very rude, and rushing the class, disrespectful, swearing and making negative comments to the whole class as they were outside doing their hands-on comps making their week very stressful.  They lacked focus, had unfinished tasks and were frustrated due to his mannerism.  Plaintiff and most of his classmates were discussing this issue and how they would present it to the main Instructor Abel.  They made a decision that they would write a bad review on this guest instructor (Jonathan) at the end of their two-week course. Due to the discrimination, hostile work environment and retaliation and wrongful termination, Plaintiff believes he was discriminated on account of his disability, real or perceived (ADHD).

5.24     During his employment with **AEP TEXAS COMPANY, INC.,** Plaintiff was subjected to discrimination and a hostile work environment.  Plaintiff believes he was wrongfully terminated.  Plaintiff believes he was discriminated against on account of his disability real or perceived. Plaintiff also believes he was terminated due to the complaints made against his employer about the disparate, discriminatory treatment and hostile work environment.

5.25     Plaintiff alleges that there was no legitimate business justification for his termination in that the Plaintiff had always performed a satisfactory job for the Defendant employer during his employment and that there was work available and there continues to be work available which Plaintiff could perform.

## VI.
## Causes of Action – Wrongful Discharge

**A.      Violations of the Texas Commission on Human Rights Act**

6.1      Plaintiff re-alleges the allegations contained in Section V, entitled *Factual Background.*

6.2      Plaintiff alleges that he was discriminated against by the Defendant due to his disability real or perceived (ADHD) in violation of the Texas Commission on Human Rights Act (the "TCHRA") as amended.

6.3      On or about September 26, 2019, Plaintiff was wrongfully terminated due to discriminatory reasons and due to the culmination of discriminatory conduct directed against him by the Defendant AEP.

6.4      The Defendant employer illegally discriminated and retaliated against the Plaintiff, and illegally terminated the Plaintiff on account of his disability real or perceived due to his ADHD by his supervisor in violation of the Texas Commission on Human Rights Act TCHRA as amended.

6.5      Plaintiff alleges that there was no legitimate business justification for his termination in that Plaintiff had always performed a satisfactory job for the Defendant.

**Section 21.051 Discrimination by Employer**

An employer commits an unlawful employment practice if because of race, color, **disability**, religion, sex, national origin, or age, the employer:

1.      Fails or refuses to hire an individual, ***discharges an individual, or discriminates in any other manner against the individual in connection with compensation or the terms, conditions, or privileges of employment;*** or

2.      ***Limits, segregates or classifies*** an employee or applicant for employment in a manner that would deprive or tend to deprive an ***individual of any employment opportunity or adversely affect in any other manner the status of an employee.***

(Vernon's, 2013) (Emphasis added)

6.6     The conduct of the Defendant employer complained of constitutes discrimination on account of the Plaintiff's disability real or perceived due to his ADHD by his supervisor. The Defendant employer, its agents, servants, and employees improperly permitted such discriminatory and retaliatory conduct to exist in the workplace. As such, Plaintiff sues the Defendant employer for the acts of its managers, supervisors, employees and agents.

## VII.
## RETALIATION

7.1     Plaintiff Edgar Omar Lopez further asserts a cause of action against the Defendant employer for retaliation in violation of the Texas Commission on Human Rights Act which - reads as follows:

**Section 21.055, Retaliation**

> *An employer,* labor union or employment agency **commits an** *unlawful employment practice if the employer,* labor union or employment agency *retaliates or discriminates* against a person who, under this Chapter:
>
> 1.     **Opposes discriminatory practice;**
>
> 2.     **Makes or files a charge;**
>
> 3.     **Files a complaint; or**
>
> 4.     **Testifies, assists or participates in any manner in an investigation, proceeding or hearing.**
>
> (Vernon's 2013) (Emphasis added).

7.2     Plaintiff was retaliated against for opposing his supervisor's conduct including filing and/or making a complaint, to wit: he was terminated not long after.

7.3     As a result of the discriminatory treatment and other wrongful conduct described above, Plaintiff's termination, and the acts described herein, the Plaintiff has suffered damages as further alleged in this Petition.

# VIII.
## Actual Damages

8.1     As a result of the incident made the basis of this suit, Plaintiff has incurred damages in the following respects:

### A.     Lost Earnings and Special Damages

8.2     At the time of the incident complained of, Plaintiff was gainfully employed. As a proximate result of the wrongful acts of the Defendant, the Plaintiff was unable to attend to his occupation and thereby suffered a loss of income for which he hereby sues. As a result of the wrongful acts of the Defendant employer, the Plaintiff's earnings, retirement and capacity to earn a livelihood were severely impaired. In all reasonable probability, the Plaintiff's loss of earnings and loss of earning capacity will continue long into the future, if not for the balance of the Plaintiff's natural life. Plaintiff therefore sues for any lost earnings in the form of back pay, lost wages, front pay, retirement benefits, and fringe benefits, lost future earnings and/or diminished earning capacity to the extent permitted by law due to the acts complained of above.

### B.     Past and Future Mental Anguish

8.3     As a result of the incident described above, that is made the basis of this suit, Plaintiff has suffered physical injury, sickness and illness as well as severe mental pain and anguish. The Plaintiff has suffered feelings of anxiety, worthlessness, embarrassment, and inferiority. The Plaintiff has further suffered ill health effects including but not limited to agitation, restlessness, sleeplessness, depression and loss of self-esteem due to the discriminatory treatment and/or her illegal termination. In all reasonable probability, the Plaintiff will continue to suffer such severe mental and physical pain and anguish for a long time into the future, if not for the balance of his natural life.

## IX.
## Attorney's Fees

9.1     By reason of the allegations of this petition and should the Plaintiff be designated the "prevailing party", Plaintiff is entitled to recover attorney's fees in a sum that is reasonable and necessary. In this connection, Plaintiff will show that he has employed the undersigned attorneys to assist him in the prosecution of this action. Plaintiff further seeks an upward adjustment or enhancement to the lodestar amount of attorney's fees to be determined in the prosecution of this lawsuit. A reasonable attorney's fee is further requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts. If ultimately successful in this case, Plaintiff fully expects that the Defendant will appeal this case. Plaintiff seeks attorney's fees to compensate the Plaintiff for the attorney's fees he has and will incur in the prosecution of this lawsuit, both at trial and on appeal. Plaintiff further pleads for the recovery of reasonable and necessary expenses for the use of associate counsel, paralegals and/or law clerks that assist in the prosecution of the case. As permitted, Plaintiff also seeks to re-coup all litigation expenses expended in the prosecution of this lawsuit.

## X.
## Exemplary Damages

10.1     The conduct of the Defendant, as set out above, was carried out and constituted such an entire want of care as to constitute a conscious indifference to the rights or welfare of the Plaintiff. Because of the spite, ill-will, malicious and fraudulent intent held by the Defendant's management toward the Plaintiff, such management, acting in a willful and intentional manner, committed certain acts calculated to cause injury and/or damage to the Plaintiff. Accordingly, the Defendant acted with malice, actual malice and/or a specific intent to injure the Plaintiff. The Plaintiff is hereby entitled to recover exemplary or punitive damages to deter such cruel and undignified procedures by the Defendants and its management in the future. Accordingly, Plaintiff

Edgar Omar Lopez requests that punitive damages be awarded against the Defendant as a result of its egregious violations of the law.

## XI
## Demand for Jury Trial

11.1    Plaintiff, by and through her attorneys of record and pursuant to Rule 216 of the Texas Rules of Civil Procedure, makes and files this the Demand for Trial by Jury in the above-styled and numbered cause. Contemporaneously with the filing of this jury demand, Plaintiff has deposited the required jury fee with the County Clerk of Cameron County, Texas. Plaintiff requests that this case be set on the jury docket of the court for disposition in due order and as soon as practicable.

## XII
## Requests for Disclosure

12.1    Pursuant to Texas Civil Rule of Procedure 194, Plaintiff requests that Defendant Dollar General disclose, within 50 days of the service of these Requests, the information or materials described in Rule 194.2.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff **EDGAR OMAR LOPEZ** prays that this Honorable Court grant the following:

(1)    Judgment against the Defendant employer, **AEP TEXAS COMPANY, INC.,** for the Plaintiff's actual damages;

(2)    Punitive damages;

(3)    Attorney's fees;

(4)    Pre-judgment interest allowed by law;

(5)    Interest on said judgment at the legal rate from the date of judgment;

(6)    For costs of suit herein; and

(7)    For such other and further relief at law or in equity to which the Plaintiff may show himself justly entitled to receive and for which he shall forever pray.

Respectfully submitted,

**THE LAW OFFICES OF
CINDY A. GARCIA, P.C.**
1113 Nightingale Avenue
McAllen, Texas 78504
(956) 412-7055 – Telephone
(956) 412-7105 – Facsimile
thegarcialawfirm@gmail.com;
cluna.garcialaw@gmail.com
By: /s/ cindy a. garcia
     Cindy A. Garcia
     State Bar No. 07631710

**ATTORNEY FOR PLAINTIFF
EDGAR OMAR LOPEZ**

# EXHIBIT

# "A"

# Notice of Dismissal & Right to File Civil Action

Edgar Omar Lopez
v.
AEP Texas Company, Inc.

**Edgar O. Lopez**
**c/o Cindy A. Garcia**
**Garcia Law Group**
**1113 Nightingale Avenue**
**Mcallen, TX 78504**

# NOTICE OF DISMISSAL AND RIGHT TO FILE CIVIL ACTION

### Edgar O. Lopez v. AEP Texas, San Benito Service Center

| TWCCRD Charge No. | EEOC Charge No. | TWCCRD Representative: |
|---|---|---|
| 1B19911 | 31C-2020-00542 | Sylvia Sharp |

The Civil Rights Division has dismissed this Charge and is closing its file for the following reason:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the TWCCRD.

[ ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act or the Texas Labor Code, Chapter 21.

[ ]   The Respondent employs less than the required number of employees or not otherwise covered by the statutes.

[ ]   We cannot investigate your charge because it was not filed within the time limits required by law.

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You had 30 days to accept a reasonable settlement offer that afforded full relief for the harm you alleged. You failed to accept the full relief.

[ ]   The TWCCRD issues the following determination:  Based upon its investigation, the TWCCRD is unable to conclude that the information obtained establishes any violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

**[X]**   **Other:  Notice of Right to File Civil Action requested by Complainant's legal representative.**

DocuSign Envelope ID: DAB39276-C47D-4482-9511-9DEF81B9FA71

**Edgar O. Lopez v. AEP Texas, San Benito Service Center**
**TWCCRD Charge No: 1B19911**
**EEOC Charge No. 31C-2020-00542**

## NOTICE OF RIGHT TO FILE CIVIL ACTION

Pursuant to Sections 21.208, 21.252 and 21.254 of the Texas Labor Code, as amended, this notice is to advise you of your right to bring a private civil action in state court in the above referenced case. **PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.** The time limit for filing suit based on a federal claim may be different.

**COVID-19 UPDATE: Texas courts may modify deadlines and procedures to continue service. Contact the court with jurisdiction over your matter for details.**

## EEOC REVIEW NOTICE:

As your charge was dual filed under Title VII of the Civil Rights Act/Age Discrimination in Employment Act/Americans with Disabilities Act, which are enforced by the U.S. Equal Employment Opportunity Commission (EEOC), you have the right to request an EEOC review of this final decision on your case. **To secure a review, you must request it in writing within fifteen (15) days from the date of the notice.** Send your request to: San Antonio EEOC, 5410 Fredericksburg Road, Suite 200, San Antonio, TX 78229

On behalf of the Division

*Lynda Pringle for Bryan Snoddy*        10/28/2020
_____        _____
Bryan Snoddy                                   Date
Division Director

cc:

Abbie Fellrath
AEP
One Riverside Plaza
Columbus, OH 43215



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: DAB39276C47D448295119DFF81B9FA71 | | Status: Completed |
| Subject: 2020-10-28 Lopez NRFCA 31C-2020-00542.pdf | | |
| docSeqId: | | |
| docType: | | |
| Source Envelope: | | |
| Document Pages: 2 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Lynda Pringle |
| AutoNav: Enabled | | 101 E. 15th Street, Room 0154-B |
| EnvelopeId Stamping: Enabled | | Austin, TX  78778 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | lynda.pringle@twc.state.tx.us |
| | | IP Address: 204.65.0.21 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Lynda Pringle | Location: DocuSign |
| 10/28/2020 2:57:26 PM | lynda.pringle@twc.state.tx.us | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Lynda Pringle for Bryan Snoddy | *Lynda Pringle for Bryan Snoddy* | Sent: 10/28/2020 2:59:39 PM |
| lynda.pringle@twc.state.tx.us | | Viewed: 10/28/2020 3:00:03 PM |
| Investigator | | Signed: 10/28/2020 3:00:13 PM |
| Texas Workforce Commission | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 172.19.128.145 | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Cindy Garcia | COPIED | Sent: 10/28/2020 3:00:14 PM |
| thegarcialawfirm@gmail.com | | Viewed: 10/28/2020 5:14:45 PM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 5/28/2020 2:58:25 PM | | |
| ID: c0a1468e-957d-48ca-b340-7634066fe9ae | | |
| Abbie Fellrath | COPIED | Sent: 10/28/2020 3:00:14 PM |
| affellrath@aep.com | | Viewed: 10/28/2020 4:38:55 PM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Venessa Hernandez<br>venessa.hernandez@twc.state.tx.us<br>Administrative Assistant<br>Texas Workforce Commission<br>Security Level: Email, Account Authentication<br>(None) | **COPIED** | Sent: 10/28/2020 3:00:15 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/28/2020 2:59:39 PM |
| Certified Delivered | Security Checked | 10/28/2020 3:00:03 PM |
| Signing Complete | Security Checked | 10/28/2020 3:00:13 PM |
| Completed | Security Checked | 10/28/2020 3:00:15 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**